IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | C.A. No. 3:19-cv-00257 |
| HELSON PACHECO-SERRANT, M.D., | § § § | |
| Defendant. | § | |

## COMPLAINT

Plaintiff Metropolitan Life Insurance Company ("MetLife") complains of Defendant Helson Pacheco-Serrant, M.D a/k/a Helson Pacheco ("Pacheco-Serrant") and states:

## PARTIES

1. **MetLife.** MetLife is a New York insurance corporation with its principal office and place of business located in New York, New York.

2. **Pacheco-Serrant.** Pacheco-Serrant is a citizen of Texas who may be served with process at his residence address, 3916 Flamingo Drive, El Paso, Texas 79902, or wherever he may be found.

## JURISDICTION AND VENUE

3. **Jurisdiction.** The Court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and there is complete diversity of citizenship between MetLife and Pacheco-Serrant. In that regard, MetLife is a citizen of New York, and Pacheco-Serrant is a citizen of Texas.

4. **Venue.**  Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)(1), as Pacheco-Serrant resides in this division and district and a substantial part of the events or omissions giving rise to MetLife's claims occurred here.

## OPERATIVE FACTS

5. **The Application.**  In September 2014, Pacheco-Serrant applied to MetLife for a disability income insurance policy.  In the Application for Individual Disability Income Insurance (the "Application"), which he signed on September 4, 2014, Pacheco-Serrant denied that he had ever received treatment, attention, or advice for, been told that he had, or had any known indication of (among other diseases and disorders) "any disease, disorder or deformity of the bones, muscles, tendons, or joints, including the spine," "any neck or back problems or disorders," or any "neurological disorder."  Pacheco-Serrant also denied that, other than as indicated, he had ever had a medical test or surgical operation performed or had gone to a doctor's office for observation, examination, or treatment.  Pacheco-Serrant signed the Application beneath the following provisions:

> I have read this application and any supplemental applications (collectively, "Applications") and I agree that, to the best of my knowledge and belief: (a) all statements and answers are true and complete; and (b) all of the information is correctly recorded in the Applications.  I further agree that such statements and answers may be relied on by Metropolitan Life Insurance Company (MetLife) in order to determine if a policy may be issued.
>
> I understand that the Applications seek full disclosure of the information sought; and that no one but the President, the Secretary or a Vice-president of MetLife may change or waive any terms of the Applications.  No agent, financial services representative or medical examiner has the authority to determine insurability or to make or modify any contract of insurance or waive any MetLife requirements.
>
> \*\*\*
>
> I understand that the Applications, any paramedical examination form, and any amendments or exclusion riders will become a part of any policy(ies) issued as a result of the Applications.

***

> **Any person who, knowingly and with intent to defraud any insurance company or other person files an application for insurance with materially false information or conceals for the purpose of misleading information concerning any fact material thereto may be guilty of committing a fraudulent insurance act.**

(Bold in original.)

6. On September 25, 2014, Pacheco-Serrant completed Part II of the Application, which was the Paramedical/Medical Exam (the "Paramedical Examination Form"). In the Paramedical Examination Form, Pacheco-Serrant stated that he had seen Dr. Don Harper, who was with Emcare, one month ago for a "checkup WNL," and that Dr. Harper did not make any findings, give any treatment, or prescribe any medications. Pacheco-Serrant also he denied that he had ever received treatment, attention, or advice from any physician, practitioner, or health facility for, or been told by any physician, practitioner, or health facility that he had (among other diseases and disorders) headaches or "[a]rthritis, gout, osteoporosis, or other disease or disorder of the muscles, bones, spine (discs, back, neck), or joints." Pacheco-Serrant also denied that, other than as indicated, he had in the last five years undergone a checkup, consultation, or other medical test or had an illness, injury, or health condition that he had not disclosed. Pacheco-Serrant signed the Paramedical Examination Form beneath the following statement:

> I have read the answers to questions 2-14 before signing. They correctly reflect the answers given by me, and are true and complete to the best of my knowledge and belief. There are no exceptions to any such answers other than as written.

7. **MetLife Issues the Policy.** Relying on the accuracy of the information provided by Pacheco-Serrant, effective November 5, 2014, MetLife issued its Disability Income Insurance Policy no. 6 673 994 AH (the "Policy"), which included a Monthly Benefit for Total Disability of $17,000.00. The first page of the Policy stated:

> We have issued this policy to You in consideration of the payment of the Premium and the statements made in Your Application. Your Application is part of Your policy.

* * *

> **In 10-Day Right to Examine Policy.** Please read this policy. It is a legal contract between You and Us. You may return the policy to Us or to the representative through whom You bought it within 10 days from the date You receive it. If You return it within the 10-day period, the policy will be considered never to have been issued. We will refund any Premium paid.

The Time Limit on Certain Defenses section of the Policy provides in pertinent part:

> After two years from the Effective Date of this policy, or of any policy change or reinstatement, no misstatements, except for fraudulent misstatements, made by You on the Application can be used to void this policy or such policy change or reinstatement, or to deny a claim under this policy or the policy change or reinstatement, for a Disability starting after the end of such two-year period.

8. On November 25, 2014, MetLife delivered the original of the Policy, with copies of (among other documents) the Application and the Paramedical Examination Form attached, to Pacheco-Serrant, and he never contacted MetLife to advise of any errors in either the Application or the Paramedical Examination Form. The same day, Pacheco-Serrant signed the Application Amendment, in which he stated that his physical with Dr. Harper in August 2014 "was routine in nature" and had results that "were normal, with no abnormalities found and no diagnosis made."

9. **The Claim.** On April 17, 2019, Pacheco-Serrant called MetLife and indicated that he planned to submit a claim based on his inability to work as a neurosurgeon since February 23, 2019. In the Initial Claim for Disability Benefits, Pacheco-Serrant asserted that his treating physician was Dr. Eduardo Vazquez and that he had also been treated by Dr. Michael Boone, Dr. Keith Johnson, and Dr. Fadi Hanbali. In a telephone call on May 8, 2019, Pacheco-Serrant stated that his disability claim was due to neck pain, a right rotator cuff tear, and bilateral carpal tunnel syndrome.

10.     **MetLife Learns of Pacheco-Serrant's Misstatements.**  During its investigation, MetLife obtained records on Pacheco-Serrant from some of his medical providers, and those records revealed that he had made numerous misrepresentations in the Application and the Paramedical Examination Form.  By way of example, records from Dr. Vazquez indicated that he saw Pacheco-Serrant on November 4, 2013, for "[p]ain in his head"; Pacheco-Serrant was an "Established Patient" with "Established Problem Headaches"; he reported "progressive occipital headaches without a specific inciting event," with the headaches occurring "at least weekly"; he was experiencing paresthesia in both hands; the pain he was experiencing interfered with his general activity and normal work, was aggravated by physical activity, and was improved by pain medications; and he rated his current pain as 7 out of 10 and his average pain as 5 out of 10. Dr. Vazquez diagnosed Pacheco-Serrant with other complicated headache syndrome, unspecified neuralgia, neuritis, and radiculitis, cervicalgia, and unspecified myalgia and myositis.  Since Pacheco-Serrant was "currently suffering from intractable headaches that ha[d] been refractory to conservative management" and was experiencing pain symptoms that were limiting his ability to complete several activities of daily living, Dr. Vazquez performed a series of occipital nerve blocks on Pacheco-Serrant.  The records MetLife obtained from Dr. Vazquez also included the report of a November 4, 2013, chiropractic consult that Pacheco-Serrant had with Michael Ponce, D.C., who noted that Pacheco-Serrant had referred himself with complaints of neck pain and muscle pain in his neck, shoulders, and mid-scapular region; that he described his pain, which he characterized as "severe," as "sharp, stabbing, tender, [and] unbearable"; and that his pain had an insidious onset, radiated to his right upper extremity, and resulted in headaches that were associated with his neck pain.  Dr. Ponce performed electrical muscle stimulation on

Pacheco-Serrant's cervical region, manual therapy, various spinal adjustments, and myofascial release.

11. By letter dated July 19, 2019, MetLife detailed these inconsistencies and gave Pacheco-Serrant 15 days to explain why he did not disclose this information during the application process. Pacheco-Serrant retained Marc Whitehead ("Whitehead"), a Houston-based lawyer, to represent him, and by letter dated August 5, 2019, Whitehead submitted (among other information) a statement from Pacheco-Serrant and letters from both Dr. Ponce and Dr. Vazquez. In his letter, Dr. Ponce stated that he saw Dr. Pacheco for an acute onset of neck pain that resulted from several long days of performing surgery. Those statements are inconsistent with Dr. Ponce's contemporaneous notes of his November 2013 visit, in which he asserted that Dr. Pacheco's neck pain had an "insidious" onset, was aggravated by physical activity, was improved by heat and rest, and had been treated through medications such as muscle relaxants and anti-inflammatory medications. In his letter, Dr. Vazquez stated that Dr. Pacheco reported that he had recently started to suffer from cervical tightness and occipital headaches. Those statements are inconsistent with Dr. Vazquez's contemporaneous notes of this visit, which characterized Dr. Pacheco as an "Established Patient" with "Established Problem Headaches" and stated that he reported "progressive occipital headaches without a specific inciting event" and that his headaches "occur at least weekly." In his note, Dr. Vazquez stated that Dr. Pacheco's pain interfered with his "Normal Work," and his letter notes that Dr. Pacheco's symptoms were "related to his neurosurgical duties." These letters from Dr. Ponce and Dr. Vazquez served to confirm that Dr. Pacheco received medical treatment for complaints that he should have disclosed in response to multiple questions on the Application and the Paramedical Examination Form.

12. **MetLife Rescinds the Policy.** MetLife determined that Pacheco-Serrant had, in failing to truthfully answer MetLife's questions in the Application and the Paramedical Examination Form, made fraudulent misrepresentations that were material to the underwriting risk and were relied upon by MetLife in issuing the Policy. Had MetLife known of Pacheco-Serrant's true health history, it would not have issued the Policy to him. By letter dated September 10, 2019, MetLife gave notice to Pacheco-Serrant that it would not be bound by the Policy and enclosed a check for the premiums (with interest) that had been paid for it.

## CAUSES OF ACTION

13. **Rescission.** For the reasons set forth above, MetLife requests the Court to rescind and cancel the Policy and find that it was null and void as of the date of its issuance.

14. **Declaratory Judgment.** Alternatively, if it is judicially determined that the Policy is not rescinded, then MetLife states that there is an actual justiciable controversy between the parties and requests the Court to adjudicate, pursuant to 28 U.S.C. § 2201, that Pacheco-Serrant's claim is not covered under the Policy for one or more of the following reasons:

   a. **Rescission.** That Pacheco-Serrant made fraudulent, material misrepresentations during the application process for the Policy, which is rescinded as of its effective date.

   b. **Good Health.** That the Policy never became effective because, at the time the Policy was delivered and the first premium was paid, Pacheco-Serrant's health was not the same as given in the Application and the Paramedical Examination Form.

   c. **Continuing Investigation.** That MetLife can supplement its determinations with the additional information of which it learns through its ongoing investigation.

## PRAYER

15. **Relief Requested.** MetLife respectfully requests the following relief:

(a) That Pacheco-Serrant be served with the Complaint and Summons and required to answer in the time and manner prescribed by law;

(b) That the Court adjudicate that the Policy is cancelled and rescinded and is of no force or effect or, in the alternative, award MetLife the declaratory relief requested above;

(c) That MetLife have and recover its attorney's fees and court costs; and

(d) That MetLife have all such other and further relief, both general and special, at law and in equity, to which it may show itself justly entitled.

Respectfully submitted,

By: /s/ Andrew C. Whitaker
Andrew C. Whitaker
State Bar No. 21273600
andrew.whitaker@figdav.com

FIGARI + DAVENPORT, LLP
901 Main Street, Suite 3400
Dallas, Texas 75202
(214) 939-2000
(214) 939-2090 (telecopy)

Chris M. Borunda
State Bar No. 00789161
cborunda@rmjfirm.com

RAY PEÑA McCHRISTIAN, P.C.
5822 Cromo Drive
El Paso, Texas 79912
(915) 832-7200
(915) 832-7333 (telecopy)

ATTORNEYS FOR PLAINTIFF
METROPOLITAN LIFE INSURANCE
COMPANY

**COMPLAINT** - Page 8